Slip Op. No. 20-77

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **HILEX POLY CO., LLC, et al.,** | |
| Plaintiffs, | **Before: Timothy C. Stanceu, Chief Judge** |
| v. | |
| **UNITED STATES, et al.,** | **Court No. 17-00090** |
| Defendant. | |

## OPINION AND ORDER

[Granting in part and denying in part defendants' Rule 12(b)(6) motion for dismissal of action as untimely according to statute of limitations]

Dated: June 1, 2020

*J. Michael Taylor*, King & Spalding LLP, of Washington D.C., argued for plaintiffs Hilex Poly Co., LLC; Superbag Corporation; Unistar Plastics LLC; Grand Packaging Inc. d/b/a Command Packaging; Roplast Industries Inc.; and US Magnesium LLC (successor to Magnesium Corporation of America). With him on the briefs were *Jeffrey M. Telep* and *Neal J. Reynolds*.

*Beverly A. Farrell*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, NY. argued for defendants United States, Kevin K. McAleenan, Acting Commissioner of Customs, and U.S. Customs and Border Protection. With her on the briefs were *Joseph H. Hunt*, Assistant Attorney General, *Jeanne E. Davidson*, Director and *Amy M. Rubin*, Assistant Director. Of counsel were *Suzanna Hartzell-Ballard* and *Jessica Plew*, Office of Assistant Chief Counsel, U.S. Customs and Border Protection, of Indianapolis, Indiana.

Stanceu, Chief Judge: Plaintiffs contest a decision of U.S. Customs and Border Protection ("Customs" or "CBP") under which Customs did not include a type of interest ("delinquency interest") in monetary distributions Customs made to them under the Continued Dumping and Subsidy Offset Act of 2000 ("CDSOA" or "Byrd Amendment").

Before the court is defendants' motion to dismiss this action under USCIT Rule 12(b)(6) for failure to state a claim on which relief can be granted, arguing that the action is untimely under the applicable two-year statute of limitations. The court grants defendants' motion in part and denies it in part.

## I. BACKGROUND

The CDSOA, 19 U.S.C. § 1675c,[1] enacted in October 2000 and repealed in February 2006,[2] amended the Tariff Act of 1930 ("Tariff Act") to direct Customs to distribute assessed antidumping and countervailing duties to "affected domestic producers" ("ADPs"), on an annual basis, as compensation for certain qualifying expenditures. An "affected domestic producer" is a U.S. "manufacturer, producer, farmer, rancher, or worker representative" that was a "petitioner or interested party in support of a petition with respect to which an antidumping duty . . . or countervailing duty order was entered." 19 U.S.C. § 1675c(b)(1).

Under the CDSOA, domestic parties who qualified as petitioners or parties in support of a petition were identified initially by the U.S. International Trade Commission, which then provided a list of these parties to Customs. *Id.* § 1675c(d)(1). Customs was required to publish annually a notice of intent to distribute CDSOA funds for the relevant fiscal year that included

---

[1] All citations to the United States Code are to the 2012 edition unless otherwise noted, except for citations to the Continued Dumping and Subsidy Offset Act of 2000 ("CDSOA"), which are citations to 19 U.S.C. § 1675c as in effect prior to its repeal. All citations to the Code of Federal Regulations are to the 2017 edition unless otherwise noted.

[2] Under the terms of the 2006 repeal legislation, Customs is to distribute antidumping and countervailing duties assessed on entries filed before October 1, 2007, subject to certain limitations imposed in 2010. *See* Deficit Reduction Act of 2005, Pub. L. No. 109-171, § 7601(b), 120 Stat. 4, 154 (2006), *amended by* Claims Resolution Act of 2010, Pub. L. No. 111-291, § 822, 124 Stat. 3069, 3163 (2010), *amended by* Tax Relief, Unemployment Insurance Reauthorization & Job Creation Act of 2010, Pub. L. No. 111-312, § 504, 124 Stat. 3296, 3308 (2010) (current version at 19 U.S.C. § 1675c note).

the current list and invited submissions of certifications of eligibility, each of which was required to include, *inter alia*, a certification of qualifying expenditures. *Id.* § 1675c(d)(2). Distributions for a fiscal year were required to occur within 60 days following the first day of the succeeding fiscal year. *See id.* § 1675c(d)(3).

### A. Plaintiffs in this Action

The 20 plaintiffs in this action are ADPs (or successors to ADPs) that received CDSOA distributions under one or more antidumping duty orders: on polyethylene retail carrier bags from Thailand (A-549-821), polyethylene retail carrier bags from Malaysia (A-557-813), polyethylene retail carrier bags from the People's Republic of China ("China") (A-570-886), pure magnesium in granular form from China (A-570-864), alloy magnesium from China (A-570-896), and pure magnesium from China (A-570-832) (the "Orders")[3]. Compl. ¶ 2 (Apr. 18, 2017), ECF No. 2. Plaintiffs have been ADPs under the CDSOA for various fiscal years from 2001 to 2016. *Id.* ¶ 2.

### B. Interest under the CDSOA

In administering the CDSOA, Customs treated differently two types of interest that pertain to antidumping and countervailing duties: pre-liquidation interest on under-deposited

---

[3] *Antidumping Duty Order: Polyethylene Retail Carrier Bags From Thailand*, 69 Fed. Reg. 48,204 (Int'l Trade Admin. Aug. 9, 2004); *Antidumping Duty Order: Polyethylene Retail Carrier Bags From the People's Republic of China*, 69 Fed. Reg. 48,201 (Int'l Trade Admin. Aug. 9, 2004); *Antidumping Duty Order: Polyethylene Retail Carrier Bags From Malaysia*, 69 Fed. Reg. 48,203 (Int'l Trade Admin. Aug. 9, 2004); *Antidumping Duty Order: Pure Magnesium in Granular Form From the People's Republic of China*, 66 Fed. Reg. 57,936 (Int'l Trade Admin. Nov. 19, 2001); *Notice of Antidumping Duty Order: Magnesium Metal From the People's Republic of China*, 70 Fed. Reg. 19,928 (Int'l Trade Admin. Apr. 15, 2005); *Notice of Antidumping Duty Orders: Pure Magnesium From the People's Republic of China, the Russian Federation and Ukraine; Notice of Amended Determination of Sales at Less Than Fair Value: Antidumping Duty Investigation of Pure Magnesium From the Russian Federation*, 60 Fed. Reg. 25,691 (Int'l Trade Admin. May 12, 1998).

antidumping and countervailing duties that accrued pursuant to 19 U.S.C. § 1677g ("Section 1677g interest")[4] and post-liquidation interest that accrued pursuant to 19 U.S.C. § 1505(d) (the aforementioned "delinquency interest," also identified herein as "Section 1505(d) interest").[5] Section 1677g interest applies only to underpayments (and overpayments) of antidumping and countervailing duties; Section 1505(d) interest applies to duties, taxes, and fees generally.[6] During the period for which plaintiffs claim entitlement to delinquency interest, Customs included Section 1677g interest, but not Section 1505(d) interest, in CDSOA distributions made to ADPs, including plaintiffs.

Section 1677g interest arises from the process of assessing antidumping or countervailing duties. An importer entering goods subject to an antidumping or countervailing duty order deposits estimated antidumping or countervailing duties, with such estimate typically based on the duty rate from the investigation or most recently completed annual review of the order. *See*

---

[4] "Interest shall be payable on overpayments and underpayments of amounts deposited on merchandise entered, or withdrawn from warehouse, for consumption on and after—(1) the date of publication of a countervailing or antidumping duty order under this subtitle . . . ." 19 U.S.C. § 1677g.

[5] The Tariff Act provision on delinquency interest reads as follows:

> If duties, fees, and interest determined to be due or refunded are not paid in full within the 30-day period specified in subsection (b) [30 days after issuance of a bill for payment], any unpaid balance shall be considered delinquent and bear interest by 30-day periods, at a rate determined by the Secretary [of the Treasury] from the date of liquidation or reliquidation until the full balance is paid. No interest shall accrue during the 30-day period in which payment is actually made.

19 U.S.C. § 1505(d).

[6] Pre-liquidation interest on duties and fees is addressed generally in 19 U.S.C. § 1505(b) ("The Customs Service shall collect any increased or additional duties and fees due, together with interest thereon, or refund an excess moneys deposited, together with interest thereon, as determined on a liquidation or reliquidation.").

19 C.F.R. § 141.101-03.  When the actual amount of antidumping or countervailing duties owed on the entry is assessed at liquidation, the importer is billed for any underpayment and the accrued Section 1677g interest on the underpayment.  *See* 19 U.S.C. § 1677g(a).

Section 1505(d) interest, or delinquency interest, arises after Customs liquidates an entry. An importer is allowed thirty days to pay the full amount owed as calculated at liquidation, which will include any ordinary duties and special duties (including antidumping and countervailing duties), taxes, fees, and interest, including any Section 1677g interest on under-deposited antidumping and countervailing duties.  19 U.S.C. § 1505(b).  Delinquency interest begins to accrue if any of that full amount remains unpaid after 30 days and continues to accrue at each 30-day interval thereafter.  *Id.* § 1505(d).

Prior to 2016, Customs deposited accrued Section 1677g interest, but not Section 1505(d) interest, into the special accounts for distributions made to ADPs under the CDSOA.  Defs.' Mot. to Dismiss 4 (Sept. 12, 2018), ECF No. 19 ("Defs.' Mot.").  In 2016, Congress required specified types of interest received after September 31, 2014 from a bond or a surety on a bond, including Section 1505(d) interest, to be deposited in the special accounts for CDSOA distributions made on or after the date of enactment, February 24, 2016.  Trade Facilitation and Trade Enforcement Act of 2015, Pub. L. No. 114-125, § 605, 130 Stat. 122, 187–88 (2016) ("TFTEA").  Because the TFTEA provision was effective upon enactment, *id.* § 605(a), CDSOA distributions for Fiscal Year 2016 were the first distributions affected by the change.

### C. Proceedings in the Court of International Trade

Plaintiffs commenced this action on April 18, 2017.  Summons, ECF No. 1; Compl. Defendants filed a motion to dismiss on September 12, 2018.  Defs.' Mot.  Plaintiffs filed a memorandum in opposition on November 7, 2018.  Pls.' Mem. in Opp'n to Defs.' Mot. to

Dismiss, ECF No. 25 ("Pls.' Mem."). Defendants replied in support of their motion on November 28, 2018. Defs.' Reply Mem. in Further Supp. Of Defs.' Mot. to Dismiss, ECF No. 26. The court held oral argument on May 2, 2019.

On July 24, 2019, the court ordered supplemental briefing on two issues: (1) whether the Customs regulation implementing the CDSOA provided adequate notice of a decision not to distribute delinquency interest to ADPs, and (2) under an assumption that Customs provided adequate notice, the time at which plaintiffs' claims accrued. Order, ECF No. 47.

In response to the court's inquiries, plaintiffs filed a supplemental brief in opposition to the motion to dismiss on August 23, 2019. Pls.' Suppl. Brief Responding to the Court's Questions and in Opp'n to Defs.' Mot. to Dismiss, ECF No. 50 ("Pls.' Suppl. Br."). Defendants filed a response on October 2, 2019. Defs.' Resp. to Pls.' Suppl. Mem. of Law and in Further Supp. of Defs.' Mot. to Dismiss, ECF No. 54.

## II. DISCUSSION

### A. Subject Matter Jurisdiction

The court exercises subject matter jurisdiction according to section 201 of the Customs Courts Act of 1980, 28 U.S.C. § 1581(i)(2), (i)(4). Paragraph (i)(2) of § 1581 grants this Court jurisdiction of a civil action "that arises out of any law of the United States providing for . . . tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue." *Id.* § 1581(i)(2). Paragraph (i)(4) grants this Court jurisdiction of a civil action arising "out of any law of the United States providing for . . . administration and enforcement with respect to the matters referred to in paragraphs (1)–(3) of this subsection." *Id.* § 1581(i)(4).

### B. Rule 12(b)(6) Motions

In deciding a motion to dismiss for failure to state a claim upon which relief can be granted, the court assumes all factual allegations in the complaint to be true (even if doubtful in fact) and draws all reasonable inferences in a plaintiff's favor. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("*Twombly*"); *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed. Cir. 1991). USCIT Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint need not contain detailed factual allegations, but it must plead facts sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

### C. Plaintiffs' Claims

Plaintiffs claim that CBP's practice of not distributing Section 1505(d) interest is unlawful and seek an order directing Customs to distribute the Section 1505(d) interest they claim they should have received. Specifically, they seek delinquency interest they contend Customs should have included in annual CDSOA distributions dating all the way back to the first fiscal years for which they were eligible to receive, and did receive, distributions as ADPs. Their demands include delinquency interest collected by Customs on payments that were made by sureties, as well as importers, and also include payments of delinquency interest that were made in cases in this Court that were litigated or settled. Compl. ¶ 31.

### D. Defendants' Motion to Dismiss

Defendants argue that plaintiffs' claims are barred by the applicable two-year statute of limitations. Defs.' Mot. 6; *see* 28 U.S.C. § 2636(i) (barring an action brought under the jurisdiction of 28 U.S.C. § 1581(i) "unless commenced in accordance with the rules of the court within two years after the cause of action first accrues"). Defendants' primary argument is that

all of plaintiffs' claims are time-barred, basing their argument on the September 21, 2001 publication of CBP's implementing regulation, which, defendants maintain, constitutes the agency decision being challenged in this litigation.  Defs'. Mot. 9–16.  Defendants argue in the alternative that even were the court to hold that plaintiffs' claims accrued each year in which plaintiffs received CDSOA distributions, the statute of limitations still would bar all claims to delinquency interest on distributions made more than two years prior to the commencement of this action on April 18, 2017.  Defs.' Mot. 17–21.

The court rules that defendants' motion to dismiss based on the statute of limitations must be granted in part and denied in part.  Plaintiffs' causes of action are timely to the extent plaintiffs seek Section 1505(d) interest relating to CDSOA distributions occurring during the two-year period prior to their initiating their actions on April 18, 2017, but all claims for interest relating to CDSOA distributions made prior to that two-year period are barred by the statute of limitations.

### E. The Agency's Regulation Implementing the CDSOA Provided Adequate Notice of a Regulatory Decision that Delinquency Interest Would Not Be Distributed to ADPs

The CDSOA required Customs to establish a "special account" in the U.S. Treasury for each qualifying antidumping or countervailing duty order, into which Customs would deposit all duties assessed under that order and from which Customs would make distributions to ADPs on an annual, fiscal-year basis.  19 U.S.C. § 1675c(e)(1)–(e)(2).  Two provisions in the CDSOA addressed the interest to be deposited into the special accounts and distributed to ADPs.  The CDSOA required that Customs "deposit into the special accounts, all antidumping or countervailing duties (*including interest earned on such duties*) that are assessed after the effective date of this section under the antidumping order or finding or the countervailing duty order with respect to which the account was established."  *Id.* § 1675c(e)(2) (emphasis added).

The statute also provided that Customs "shall distribute all funds (including *all* interest earned on the funds) from assessed duties received in the preceding fiscal year to affected domestic producers based on the certifications described in paragraph (2) [§ 1675c(d)(2)]." *Id.* § 1675c(d)(3) (emphasis added). The CDSOA directed that Customs "shall by regulation prescribe the time and manner in which distribution of the funds in a special account shall be made." *Id.* § 1675c(e)(3).

Plaintiffs allege that prior to July 15, 2016 they did not know Customs had announced a practice under which delinquency interest would not be distributed to ADPs. They allege specifically that, prior to the July 15, 2016 filing in this Court of a complaint by another group of ADPs raising a claim on delinquency interest similar to that of plaintiffs' here, *Adee Honey Farms, et. al. v. United States*, Consol. Ct. No. 16-00127 ("*Adee Honey*"), they "did not know . . . of any specific instance" in which Customs received and did not distribute delinquency interest. Compl. ¶¶ 13, 16. Plaintiffs further allege that, in the alternative, they were made aware of CBP's practice by congressional statements in February 2016, prior to, and culminating in, the passage of TFTEA. *Id.* ¶¶ 15–16 (citing 132 Cong. Rec. S836–46 (daily ed. Feb. 11, 2016) (statement of Senator John Thune)). For the purpose of ruling on defendants' motion to dismiss, the court accepts these alleged facts as true. *See Gould*, 935 F.2d at 1274.

Defendants argue that the 2001 publication of CBP's implementing regulation placed plaintiffs on notice that Customs had decided not to place collected delinquency interest in the special accounts for distribution under the CDSOA. Defs.' Mot. 11.

Customs published a notice of proposed rulemaking (the "Proposed Rule") on June 26, 2001 on administration of the CDSOA. *Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers*, 66 Fed. Reg. 33,920 (June 26, 2001) (to be codified at

19 C.F.R. § 159.61–159.64 (2002)) ("*Proposed Rule*"). After receiving comments, Customs published a notice of final rulemaking (the "Final Rule") on September 21, 2001. *Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers*, 66 Fed. Reg. 48,546 (Sept. 21, 2001) (codified at 19 C.F.R. §§ 159.61–159.64, 178.2 (2002)) ("*Final Rule*").[7] Referring to the statutory special accounts (into which antidumping and countervailing duties would be placed upon liquidation) and certain "clearing accounts" Customs also established for administering the CDSOA (into which would be placed estimated antidumping and countervailing duties deposited upon entry), the Final Rule provides that "[n]o interest will accrue in the[] accounts. 19 C.F.R. § 159.64(e). The provision then states: "However, statutory interest charged on antidumping and countervailing duties at liquidation will be transferred to the Special Account, when collected from the importer." *Id.*

The regulatory provision, standing alone, informs the reader that interest on antidumping and countervailing duties "charged . . . at liquidation" will be placed into the special accounts for distribution to ADPs. *Id.* The reference to statutory interest "charged" on antidumping and countervailing duties "at liquidation" connotes an intent to deposit into the special accounts interest accrued under 19 U.S.C. § 1677g, which governs interest on underpaid (and overpaid) antidumping and countervailing duties that accrues up until liquidation. *See* 19 U.S.C. § 1677g. It cannot correctly be read as a reference to delinquency interest under 19 U.S.C. § 1505(d), for that type of interest is not charged at liquidation and can accrue only after liquidation has occurred and only if the importer does not satisfy the obligation to pay the liquidated duties within the allowed 30-day period. *See* 19 U.S.C. § 1505(d). In identifying for placement in the special accounts "interest charged on antidumping and countervailing duties at liquidation,"

---

[7] The regulations at issue remain unchanged since the promulgation of the Final Rule.

19 C.F.R. § 159.64(e) implies, but does not expressly state, that other types of interest (such as delinquency interest) will not be placed into the special accounts.

The preamble accompanying the Final Rule upon promulgation also referred to the topic of interest that will be deposited into the special accounts for distribution to ADPs. *See Final Rule*, 66 Fed. Reg. at 48,550. In response to a question posed by a commenter on the Proposed Rule on whether funds in the special accounts (or the related "clearing accounts" established by the regulation) would bear interest, Customs replied as follows:

> Because Congress did not make an explicit provision for the accounts established under the CDSOA to be interest-bearing, no interest may accrue on these accounts. Thus, only interest charged on antidumping and countervailing duty funds themselves, pursuant to the express authority in 19 U.S.C. § 1677g, will be transferred to the special accounts and be made available for distribution under the CDSOA.

*Id.* Two things are noteworthy about this language in the preamble. First, unlike the regulation to which it pertains, and contrary to plaintiffs' assertion that this sentence "only explained that [CBP's] special accounts would not be made interest-bearing," Pls.' Mem. 6, the preamble uses the word "only" to modify the word "interest," the plain meaning of which is to exclude all other types of interest from the interest that will be "transferred to the special accounts and be made available for distribution." *Final Rule*, 66 Fed. Reg. at 48,550. Second, by referring expressly to 19 U.S.C. § 1677g, the preamble refers unambiguously to pre-liquidation interest of the type that 19 C.F.R. § 159.64(e) identified as interest that will be deposited into the special accounts and distributed to ADPs.

The court concludes that 19 C.F.R. § 159.64(e), when read together with the preamble language that pertained to it, provided adequate notice of the agency's decision that any type of interest other than Section 1677g interest would not be deposited into the special accounts for distribution to ADPs. In both § 159.64(e) and the associated preamble language, Customs linked

the issue of what interest it had decided would be deposited into the special accounts with the agency's decision on the issue of whether the accounts themselves will earn interest (a decision plaintiffs do not challenge in this litigation). While this method of drafting, which linked two separate issues, perhaps was less than ideal, the court cannot conclude that the agency's linking the two issues made unclear or uncertain the agency's decision on what type of interest would be deposited into the accounts. Because delinquency interest collected according to 19 U.S.C. § 1505(d) unquestionably is "interest," the meaning conveyed by the Final Rule is sufficiently clear to have placed interested parties on notice of the agency's decision as to the type of interest Customs would place into the special accounts and thereby make available for distribution to ADPs. *See* 44 U.S.C. § 1507 (publication of a document in the Federal Register generally "is sufficient to give notice of the contents of the document to a person subject to or affected by it"). Plaintiffs make a number of arguments to support their contention to the contrary.

Plaintiffs argue, first, that the Proposed Rule contained clear language expressing CBP's intent to distribute delinquency interest. Pls.' Mem. 12–14. Proposed 19 C.F.R. § 159.64(e) provided that the Special Accounts and Clearing Accounts would not bear interest but further stated: "However, statutory interest charged on antidumping and countervailing duties at liquidation, will be transferred to the Clearing Account or Special Account, as appropriate, when collected from the importer." *Proposed Rule*, 66 Fed. Reg. at 33,926. This proposed provision refutes rather than supports plaintiffs' argument. Interest charged on antidumping and countervailing duties at liquidation is Section 1677g interest, not Section 1505(d) interest. The preamble to the Proposed Rule stated as follows: "[I]f there is interest paid by the importer on any antidumping or countervailing duties billed in the liquidation process for the import entries, that interest will be transferred to the Clearing Account or Special Account, as appropriate." *Id.*

at 33,922; *see* Pls.' Mem. 12.  The most that can be said for plaintiffs' argument is that this preamble sentence is ambiguous.  It can be read to mean that the interest transferred to the accounts will be interest that is billed in the liquidation process, or it can be read to mean that the interest transferred to the accounts will be interest on *duties* that are billed in the liquidation process.  The former refutes plaintiffs' argument, as the only interest billed in the liquidation process (as opposed to the collection process) is pre-liquidation interest.  *See* 19 U.S.C. § 1505(b), (d).  The latter interpretation is more plausible given the proximity of the words "billed in the liquidation process" to the word "duties," but even if so interpreted it is still ambiguous on the *type* of interest on duties that is contemplated.  It is not clear whether the reference to interest paid on the duties is to pre-liquidation or post-liquidation interest.  And even if this sentence in the Proposed Rule unambiguously were to have supported plaintiffs' argument, it would not resolve the issue of notice because the relevant provisions in the Proposed Rule and the Final Rule were notice to the contrary.

Plaintiffs next argue that the Final Rule did not provide adequate notice that Customs intended not to distribute delinquency interest.  Pls.' Mem. 15–17.  But as the court discussed previously, the Final Rule provided adequate notice of CBP's administrative decision.  Plaintiffs also argue that the Final Rule did not provide adequate notice because "the clarity of the statutory language" requiring Customs to distribute delinquency interest made plaintiffs believe that Customs would do so.  *Id.* at 18.  Even were the court to accept, *arguendo*, plaintiffs' statutory interpretation, the court still would reject this argument because plaintiffs were placed on notice of the contents of the Final Rule.

In their supplemental briefing, plaintiffs argue that the preamble to the Final Rule did not provide adequate notice because preambles are not legally binding.  Pls.' Suppl. Br. 5–9.

Whether the preamble had the force of law as a binding regulation is not the issue before the court; rather, the issue is the adequacy of notice provided by the notice of final rulemaking, an issue for which language in the preamble is unquestionably relevant. Citing *MCI Telecommunications Corp. v. F.C.C.*, 57 F.3d 1136, 1142 (D.C. Cir. 1995) ("*MCI Telecomms.*"), plaintiffs further argue that the sentence of the preamble was too "obscure" to provide effective notice, Pls.' Suppl. Br. 10–13. *MCI Telecomms.* is not analogous to this case. There, the discussion of the relevant issue was limited to a footnote in the "Background" section and appeared solely in the notice of proposed rulemaking. *MCI Telecomms.*, 57 F.3d at 1141–42. Here, the notice of final rulemaking contained a relevant regulatory provision and text in the preamble, under a heading titled "Interest," that clarified its meaning.

**F. Plaintiffs Have No Timely Claims that Accrued upon the Promulgation of the Final Rule or the First Time the Final Rule Was Applied to Them**

In summary, the September 21, 2001 publication of the Final Rule was adequate notice of a Customs decision, set forth in § 159.64 thereof, that Section 1677g interest would be the only type of interest distributed to ADPs. Disputing this conclusion, plaintiffs allege that either of two events in 2016, the July 15, 2016 filing of complaints in this Court in *Adee Honey*, another action seeking delinquency interest under the CDSOA, or, in the alternative, legislative commentary during the passage of TFTEA, provided them their first notice of CBP's practice on interest. Pls.' Mem. 10, *see* Compl. ¶ 16. Plaintiffs view these actions as signifying the accrual of their causes of action. The court disagrees.

The claims of all plaintiffs in this litigation arose under the Administrative Procedure Act ("APA"). *See* 5 U.S.C. § 706; *see Motion Sys. Corp. v. Bush*, 437 F.3d 1356, 1359 (Fed. Cir. 2008). The agency regulatory action on which plaintiffs' claims are based is the Final Rule, which in § 159.64(e) defined and limited the type of interest that would be deposited into the

special accounts and thereby made available for distribution to ADPs. No subsequent agency decision repealed or modified that decision, and no government official had authority to deviate from it.

Plaintiffs argue that even if the Final Rule provided legal notice of CBP's decision not to distribute Section 1505(d) interest (and they do not concede that it did), the earliest plaintiffs knew they were harmed by that decision, and thus had standing to sue, was in July 2016, when the complaints in *Adee Honey* were filed in this Court. Pls.' Mem. 10. Plaintiffs are correct that their individual causes of action could not have accrued prior to their having acquired standing to sue, which they could not have acquired until they knew (or had reason to know) they were adversely affected by CBP's decision. *See, e.g.*, *SKF USA Inc. v. U.S. Customs & Border Protection*, 556 F.3d 1337, 1348–49 (Fed. Cir. 2009), *cert. denied*, 560 U.S. 903 (2010) ("*SKF*"). They are incorrect in arguing that they did not acquire standing to sue until 2016.

Stated simply, each plaintiff's claim is that Customs unlawfully failed to deposit the Section 1505(d) interest into the special accounts for distribution to ADPs to which they claim a legal right to have received. Their claims rest upon their interpretation of the CDSOA and thereby raise a pure question of law. Their interpretation of the statute is that the CDSOA required Customs to deposit into the special accounts *all* interest Customs collected that related to antidumping duties, including delinquency interest stemming from unpaid antidumping duties. The Final Rule constituted adequate notice to plaintiffs that Customs had adopted an interpretation of the statute inconsistent with their own.

Plaintiffs contend they were unaware until July 2016 of a "specific instance" in which Customs was not distributing Section 1505(d) interest, but the Tariff Act itself, in 19 U.S.C. § 1505(d), made them aware that Customs has a duty to collect delinquency interest upon unpaid

duties as determined upon liquidation.  A comparison of the Final Rule to the CDSOA placed them on notice that Customs had interpreted the CDSOA, and would administer the CDSOA, such that they would be receiving only Section 1677g interest, and therefore would not be receiving Section 1505(d) interest, in any annual CDSOA distribution.  Plaintiffs are charged with knowledge of the statutory provisions essential to their claim as well as with knowledge of the contents of the Final Rule.

Any person with ADP status that stood to receive a CDSOA distribution at the time the Final Rule was promulgated would have had standing to sue at that time to claim a right to receive delinquency interest in its upcoming CDSOA distributions.  *See* 5 U.S.C. § 702 ("A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.").  Because the loss of the claimed right to receive delinquency interest in the future is an injury sufficient to confer a right to bring an APA cause of action, such a person would not have been required to demonstrate the ripeness of its claim by establishing that it already had been deprived of any delinquency interest.  *See Abbott Labs. v. Gardner*, 387 U.S. 136, 154 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).  Each plaintiff in this litigation, therefore, acquired standing to challenge the Final Rule either upon promulgation of the Final Rule or upon the first time thereafter it was placed on notice that it stood to receive a CDSOA distribution.

Plaintiffs have been ADPs eligible to receive CDSOA distributions in various fiscal years from 2001 through 2016.  *See* Compl. ¶ 2.  Plaintiffs seek recovery of any and all delinquency interest CBP unlawfully withheld from each fiscal year's CDSOA distributions.  *Id.* ¶ 31.  But because all plaintiffs in this case filed suit on April 18, 2017, no plaintiff has a timely claim

challenging the regulation that accrued on the date the regulation was promulgated (September 21, 2001). Any plaintiff who first became an ADP eligible to receive a distribution prior to April 18, 2015 does not have a timely challenge on the first application of the regulation to it. All such claims became time-barred prior to the commencement of these actions.

The only issue remaining to be decided is whether all of plaintiffs' claims are time-barred or whether any of their claims survive because they accrued during the two-year period prior to their bringing these actions on April 18, 2017.

### G. Plaintiffs' Claims Challenging the Regulation Were Untimely for CDSOA Distributions Made Prior to April 18, 2015

Relying on the decision of the Court of Appeals for the Federal Circuit ("Court of Appeals") in *SKF*, plaintiffs argue that a separate cause of action accrued each year in which they were denied delinquent interest on their CDSOA distributions. Pls.' Suppl. Br. 14–15. Plaintiffs are correct.

In *SKF*, the Court of Appeals considered, and rejected, plaintiff SKF USA Inc.'s constitutional (First Amendment and Equal Protection) challenges to the "petition support" requirement in the CDSOA, 19 U.S.C. § 1675c(a), which limits ADP status to petitioners and parties in support of an antidumping or countervailing duty petition. *SKF*, 556 F.3d at 1351–60. In the litigation, SKF USA Inc. had sought to receive CDSOA distributions under antidumping duty orders for Fiscal Year 2005. *Id.* at 1345. The Court of Appeals rejected various arguments that SKF USA Inc.'s suit was untimely, including the argument that SKF USA Inc. was required to bring its action seeking Fiscal Year 2005 distributions within two years of the October 28, 2000 enactment of the CDSOA. *Id.* at 1348–49. The Court of Appeals concluded in *SKF* that SKF USA Inc. could have brought a facial challenge to the statute but could not bring its action

seeking distributions for Fiscal Year 2005 until it was on notice that duties would be available for distribution, and knew that it had qualifying expenditures, for that fiscal year. *Id.* at 1349.

*SKF* indicates that claims for CDSOA distributions accrue annually, as of each year's distribution. Court of Appeals precedent recognizes that "substantive" challenges to an agency regulation (as opposed to procedural challenges to the method of promulgation), such as those brought by these plaintiffs, may accrue either at the time of promulgation or the time of application to an aggrieved party. *See Hyatt v. Patent and Trademark Office*, 904 F.3d 1361, 1372 (Fed. Cir. 2018). Cases on which the Court of Appeals rested its decision in *Hyatt* reflect the principle that an aggrieved party may make a substantive challenge to *any* application of a regulation to it, not merely the first. *See id.* at 1373; *Pub. Citizen v. Nuclear Regulatory Comm'n*, 901 F.2d 147, 152 n.1 (D.C. Cir. 1990) ("[W]here the petitioner challenges the *substantive* validity of a rule, failure to exercise a prior opportunity to challenge the regulation ordinarily will not preclude review" (quoting *Montana v. Clark*, 749 F.2d 740, 744 n.8 (D.C. Cir. 1984), *cert. denied*, 474 U.S. 919 (1985)) (omission accepted)); *Wind River Mining Corp. v. United States,* 946 F.2d 710, 714–15 (9th Cir. 2001) (similar). Consistent with *SKF*, *Hyatt*, and the decisions upon which they are based, the court concludes that these plaintiffs may challenge the substance of CBP's regulations as applied to them with each CDSOA distribution they received within two years of the commencement of their respective actions on April 18, 2017. Therefore, those of their claims that accrued during the two-year period prior to commencement of their actions on April 18, 2017 are timely, and those of their claims that accrued prior to that two-year period are not.

Defendants' arguments to the contrary are not convincing. Defendants cite *Brown Park Estates-Fairfield Development Co. v. United States*, 127 F.3d 1449 (Fed. Cir. 1997) ("*Brown*

*Park*"), and *Hart v. United States*, 910 F.2d 815 (Fed. Cir. 1990), for the principle that a claim flowing from a single event accrues from the event itself and not from the subsequent recurrence of damage.  Defs.' Mot. 15.  These cases, which involve the question of the applicability of the "continuing claim doctrine" to actions arising under the Tucker Act, do not speak to the issue plaintiffs' claims raise under the statute of limitations.  *Cf. Brown Park*, 127 F.3d at 1454 (statute of limitations is jurisdictional under Tucker Act); *Hart*, 910 F.2d at 817 (Tucker Act's statute of limitations is strictly construed).  The principle defendants would have the court apply to this case effectively would insulate regulations from substantive review under the APA by parties who initially were affected by them but only in later years were harmed seriously enough to make a judicial challenge worthwhile.  *See Functional Music, Inc. v. F.C.C.*, 274 F.2d 543, 546 (D.C. Cir. 1958) ("[U]nlike ordinary adjudicatory orders, administrative rules and regulations are capable of continuing application; limiting the right of review of the underlying rule would effectively deny many parties ultimately affected by a rule an opportunity to question its validity.").

### III. CONCLUSION AND ORDER

For the reasons discussed above, the court holds that plaintiffs' causes of action are barred by the two-year statute of limitations of 28 U.S.C. § 2636(i) to the extent they seek Section 1505(d) interest on any CDSOA distributions they received prior to April 18, 2015.  Claims seeking Section 1505(d) interest on distributions received within the two years prior to the commencement of their actions on April 18, 2017 are timely.  Therefore, upon all papers and proceedings held herein, and upon due deliberation, it is hereby

**ORDERED** that defendants' Motion to Dismiss (Sept. 12, 2018), ECF No. 19, be, and hereby is, granted in part and denied in part; it is further

**ORDERED** that the claims of all plaintiffs seeking Section 1505(d) interest on any CDSOA distributions received prior to April 18, 2015 are dismissed as untimely according to the two-year statute of limitations of 28 U.S.C. § 2636(i); it is further

**ORDERED** that the parties shall consult and submit to the court a joint proposed schedule for this litigation, including submission of plaintiff's Rule 56.1 motion, defendants' response thereto, plaintiffs' reply, and requests for oral argument.

    /s/ Timothy C. Stanceu
Timothy C. Stanceu
Chief Judge

Dated: June 1, 2020
New York, New York