Slip Op. No. 22-62

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **HILEX POLY CO., LLC, et al.,** | |
| Plaintiffs, | **Before: Timothy C. Stanceu, Judge** |
| v. | **Court No. 17-00090** |
| **UNITED STATES, et al.,** | |
| Defendants. | |

## OPINION AND ORDER

[Denying motion for reconsideration of court's previous ruling dismissing some claims as time-barred by the statute of limitations]

Dated: June 8, 2022

*J. Michael Taylor*, King & Spalding LLP, of Washington, D.C., for plaintiffs Hilex Poly Co., LLC, Superbag LLC (successor to Superbag Corporation), Unistar Plastics, LLC, Command Packaging, LLC (successor to Grand Packaging Inc. d/b/a Command Packaging), Roplast Industries Inc., and US Magnesium LLC (successor to Magnesium Corporation of America). With him on the submissions were *Jeffrey M. Telep*, *Jeremy M. Bylund*, and *Neal J. Reynolds*.

*Beverly A. Farrell*, Senior Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, NY, for defendants United States, U.S. Customs and Border Protection, and Chris Magnus, Commissioner of U.S. Customs and Border Protection. With her on the submission were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Justin R. Miller*, Attorney-in-Charge, International Trade Field Office. Of counsel were *Suzanna Hartzell-Ballard* and *Jessica Plew*, Office of Assistant Chief Counsel, U.S. Customs and Border Protection, of Indianapolis, Indiana.

Stanceu, Judge: Plaintiffs Hilex Poly Co., LLC, Superbag LLC, Unistar Plastics,

LLC, Command Packaging, LLC, Roplast Industries Inc., and US Magnesium LLC are

U.S. companies that qualified as "affected domestic producers" ("ADPs") entitled to receive certain cash distributions under the Continued Dumping and Subsidy Offset Act of 2000 (the "CDSOA" or "Byrd Amendment"), 19 U.S.C. § 1675c.[1]  Under the Byrd Amendment, ADPs were eligible to receive annual "continued dumping and subsidy offsets" ("distributions") resulting from duties assessed upon imported merchandise under antidumping duty ("AD") and countervailing duty ("CVD") orders.

The CDSOA directed the U.S. Customs Service (now U.S. Customs and Border Protection ("Customs" or "CBP")) to include, in the distributions made to ADPs on a fiscal-year basis, interest the government earned on assessed antidumping and countervailing duties.  In this litigation, plaintiffs claim that Customs, while including in their distributions the interest the government earned pursuant to Section 778(a) of the Tariff Act of 1930 ("Tariff Act"), 19 U.S.C. § 1677g, on underpaid antidumping and countervailing duties ("Section 1677g interest") that was assessed at liquidation, unlawfully failed to include interest collected according to Section 505(d) of the Tariff Act, 19 U.S.C. § 1505(d).  This interest, which can be identified as "Section 505(d)" interest or "delinquency" interest, accrues if the importer of record or its surety is

---

[1] All citations to the United States Code are to the 2012 edition unless otherwise noted, except for citations to the Continued Dumping and Subsidy Offset Act of 2000 ("CDSOA"), which are citations to 19 U.S.C. § 1675c as in effect prior to repeal.  All citations to the Code of Federal Regulations are to the 2014 edition unless otherwise noted.

delinquent in paying the combined amount of all duties, fees, and interest that Customs determined at liquidation to be owing on an entry of imported merchandise.

Before the court is Plaintiffs' Motion for Judgment on the Agency Record and for Reconsideration (May 24, 2021), ECF No. 83, on behalf of all plaintiffs, pursuant to USCIT Rule 56.1 ("Pls.' Mot."). In this Opinion and Order, the court rules only on the portion of plaintiffs' motion that seeks reconsideration of the court's June 1, 2020 Opinion and Order, in which the court, granting in part defendants' motion to dismiss, ruled that certain of plaintiffs' claims were time-barred by the two-year statute of limitations. *See Hilex Poly Co., LLC v. United States*, 44 CIT __, __, 450 F. Supp. 3d 1390, 1402 (2020) ("*Hilex Poly I*"). The court denies the motion for reconsideration, reserving its ruling on the remaining issues addressed in plaintiffs' Rule 56.1 motion.

## I. Background

Background on this litigation is presented in this court's prior Opinion & Order granting defendants' motion to dismiss in part and denying it in part. *See Hilex Poly I*, 44 CIT at __, 450 F. Supp. 3d at 1392–1395.

## II. Discussion

Under USCIT Rule 54(b), "any order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." USCIT R. 54(b). Plaintiffs urge reconsideration of *Hilex*

*Poly I*, which dismissed as untimely under the two-year statute of limitations, 28 U.S.C. § 2636(i), plaintiffs' claims seeking delinquency interest on CDSOA distributions received prior to April 18, 2015. *See Hilex Poly I*, 44 CIT at __, 450 F. Supp. 3d at 1401–02.

In *Hilex Poly I*, the court held that the "Final Rule" promulgated by Customs to implement the CDSOA, *Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers*, 66 Fed. Reg. 48,546 (Customs Serv. Sept. 21, 2001) (codified at 19 C.F.R. §§ 159.61–159.64, 178.2 (2002)) ("*Final Rule*") placed interested parties on notice of a decision by Customs with respect to the type of interest Customs would deposit into each "special account," where it would be available for distribution to ADPs. *Id.*, 44 CIT at __, 450 F. Supp. 3d at 1396–97 ("The court concludes that 19 C.F.R. § 159.64(e), when read together with the preamble language that pertained to it, provided adequate notice of the agency's decision that any type of interest other than Section 1677g interest would not be deposited into the special accounts for distribution to ADPs."). As a result, the court held, the only timely claims of the plaintiffs were those relating to the application of the Final Rule to their individual CDSOA distributions occurring during the two years prior to their instituting their actions. *Id.*, 44 CIT at __, 450 F. Supp. 3d at 1401 ("Therefore, those of their claims that accrued during the two-year period prior to commencement of their actions on April 18, 2017 are timely, and those of their claims that accrued prior to that two-year period are not."). As a consequence, the court

dismissed as time-barred plaintiffs' claims seeking delinquency interest on any CDSOA distributions received prior to April 18, 2015.

The Final Rule, in section 159.64(e), provided, specifically, that "statutory interest charged on antidumping and countervailing duties *at liquidation* will be transferred to the Special Account, when collected from the importer." *Final Rule*, 66 Fed. Reg. at 48,554 (emphasis added). In *Hilex Poly I*, the court reasoned that "[t]he reference to statutory interest 'charged' on antidumping and countervailing duties 'at liquidation' connotes an intent to deposit into the special accounts interest accrued under 19 U.S.C. § 1677g, which governs interest on underpaid (and overpaid) antidumping and countervailing duties that accrues up until liquidation." *Hilex Poly I*, 44 CIT at __, 450 F. Supp. 3d at 1396. The preamble to the regulation clarified that "only interest charged on antidumping and countervailing duty funds themselves, pursuant to the express authority in 19 U.S.C. § 1677g, will be transferred to the special accounts and be made available for distribution under the CDSOA." *Final Rule*, 66 Fed. Reg. at 48,550. Because interest accrues according to 19 U.S.C. § 1677g from the time of required deposit of estimated antidumping or countervailing duties up until the liquidation of the entry, but not afterward, the court viewed the regulation, as clarified by the preamble, to constitute definitive notice to interested parties that they would be receiving interest that accrued in favor of the government under 19 U.S.C. § 1677g and would not be receiving delinquency interest under 19 U.S.C. § 1505(d).

In moving for reconsideration of the court's ruling in *Hilex Poly I*, plaintiffs argue that the court should reverse its decision to dismiss the earlier claims. Pls.' Mot. 50–57. Plaintiffs argue that the "recently submitted Administrative Record Supplement now confirms that CBP is playing an interpretive shell game," *id*. at 50, and that "[i]t appears that CBP changed its mind about whether to distribute delinquency interest and reflected that decision (if at all) with the word 'only' in the preamble to the final rule," *id*. at 50–51; *see* Reply in Supp. of Pls.' Rule 56.1 Mot. for J. on the Admin. R. and for Recons. 33 (Oct. 8, 2021), ECF No. 94 ("Pls.' Reply") ("Agencies are afforded a presumption of regularity, and Plaintiffs were not required to assume that CBP would impermissibly use a preamble to change the regulation from one that is consistent with the CDSOA to one that contradicts it.")  According to plaintiffs:

> This one word, which was tucked away in a non-binding discussion of another issue, was insufficient to give Plaintiffs notice of CBP's change in position to withhold delinquency interest (which the agency also never explained in the final rule).  Plaintiffs therefore could not have challenged that decision until they obtained such notice in 2016.

Pls.' Mot. 51.  Contending that "[t]he proposed and final rules are materially the same," plaintiffs argue that "CBP's reading hinges entirely on the word 'only,' which appears only in the *preamble* to the final rule." *Id*. at 54.

Plaintiffs' argument is unconvincing.  The conclusion that the Final Rule provided notice of the type of interest to be distributed does not hinge entirely on the preamble language or the word "only" appearing therein.  The interest identified for

distribution to ADPs in section 159.64(e) of the Final Rule is interest "charged on antidumping and countervailing duties at liquidation." 19 C.F.R. § 159.64(e). Delinquency interest accruing under Section 505(d) of the Tariff Act is not charged at liquidation and can begin to accrue only *from* liquidation. See 19 U.S.C. § 1505(d). Even though § 159.64(e) does not expressly state that interest *not* charged at liquidation, i.e., delinquency interest, will *not* be added to the Special Accounts, it is unreasonable to interpret the provision to mean that any interest other than interest charged at liquidation will be made available for distribution to ADPs. The preamble, by informing interested parties that only Section 1677g interest will be made available for distribution under the CDSOA, removed any remaining doubt.

　　Based on the supplemented administrative record, Administrative Record Supplement (Feb. 19, 2021), ECF Nos. 72 (public), 74 (conf.) ("Admin. R. Supp."),[2] plaintiffs contend that as of the time the agency published its proposed rule for implementing the CDSOA, on June 26, 2001, Customs had taken the position to consider ways to distribute delinquency interest but "changed course, apparently during the time between the proposed rule and the September 21, 2001 final rule" and decided not to do so. Pls.' Mot. 53–54 (discussing a February 21, 2001 agency document, Admin. R. Supp. 511). "That is the only position of the agency in the Administrative Record that predates the publication of the proposed rule in June 2001."

---

[2] All citations in this Opinion and Order are to public documents.

*Id*. at 53. Plaintiffs state, further, that "[a] record document dated August 19, 2001 memorializes a decision to change course, noting that the '{d}ecision has been made that accrued interest for late payment of bill,' i.e., delinquency interest, 'will not be made available for disbursement under the Byrd Amendment.'" *Id*. (citing Admin. R. Supp. 579). This argument, too, is unavailing. As plaintiffs themselves acknowledge, the proposed rule, which they describe as "materially the same" as the final rule, also informed interested parties that Customs would deposit and distribute "'statutory interest charged on antidumping and countervailing duties at liquidation.'" *See* Pls.' Mot. 54 (quoting *Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers*, 66 Fed. Reg. 33,920, 33,926 (proposed June 26, 2001) (to be codified at 19 C.F.R. § 159.61–159.64 (2002)). Nothing in the proposed rule provided or even suggested to interested parties that Customs would distribute delinquency interest to ADPs. Even if, as plaintiffs argue, Customs contemplated distributing delinquency interest but "changed course" on that issue before issuing the Final Rule, such a sequence of events does not signify that Customs ever disclosed to the public a decision to distribute delinquency interest. To the contrary, the August 19, 2001 record document plaintiffs cite shows that Customs made a decision, approximately a month before publishing the Final Rule, not to do so. Plaintiffs fail to present a plausible argument that the September 21, 2001 Federal Register notice announcing the Final Rule (which included the preamble) was inadequate as public notice of that decision.

Plaintiffs also argue that "CBP's sea change requires more explanation and process than was given here." Pls.' Mot. 55. They reason that "'{t}he question is whether the notice was adequate to afford interested parties a reasonable opportunity to participate in the rulemaking process.'" *Id*. (quoting *MCI Telecomms. Corp. v. FCC*, 57 F.3d 1136, 1142 (D.C. Cir. 1995) (internal quotation marks and citations omitted)). According to plaintiffs, "[i]t is hard to see how the notice was adequate here given the timing in the record of CBP's course change" and "[t]here is no way that the preliminary rule could have prepared interested parties for the CBP's decision to go in the opposite direction than what CBP was intending when it published the proposed rule," which "is underscored by the lack of comments on the issue." *Id.* at 55–56. Again, neither the proposed rule nor the Final Rule informed interested parties that delinquency interest would be distributed. The "notice" issue pertaining to accrual of claims for purposes of the statute of limitations is whether § 159.64(e) of the Final Rule, as clarified by the preamble language, adequately informed prospective plaintiffs that Customs had decided to distribute only interest charged at liquidation, and not delinquency interest, to the ADPs. Plaintiffs confuse that "notice" issue with the issue of whether Customs afforded interested parties adequate notice and opportunity to comment on the question of delinquency interest. While the latter issue may have implications for a claim that the Final Rule was invalidly promulgated (a claim

plaintiffs do not assert in this litigation, *see* Pls.' Mot. 18–49), only the former is relevant to the time at which plaintiffs' claims accrued.

### III. CONCLUSION

Plaintiffs have not put forth a valid reason why the court should vacate or modify the decision reached in *Hilex Poly I* to dismiss the claims the court determined to be untimely. Therefore, upon considering plaintiffs' motion, all submissions made herein, and upon due diligence, it is hereby

**ORDERED** that plaintiffs' request for reconsideration of the court's ruling in *Hilex Poly Co., LLC v. United States*, 44 CIT __, 450 F. Supp. 3d 1390 (2020) be, and hereby is, denied.

/s/ Timothy C. Stanceu
Timothy C. Stanceu, Judge

Dated: June 8, 2022
      New York, New York